[Tagged]



**ORDERED in the Southern District of Florida on February 10, 2014.**

Erik P. Kimball, Judge
United States Bankruptcy Court
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | CHAPTER 15 |
| BRITISH AMERICAN INSURANCE COMPANY LIMITED, | CASE NO. 09-31881-EPK<br>CASE NO. 09-35888-EPK<br>(Jointly Administered) |
| Debtor in a Foreign Proceeding.<br>_____/ | |
| BRITISH AMERICAN INSURANCE COMPANY LIMITED, | |
| Plaintiff, | |
| v. | ADV. PROC. NO. 13-01603-EPK |
| CORBAN FUND II, LP, CORBAN PARTNERS, LLC, RYAN CORBAN GROUP, LLC, KRIEGER FAMILY PARTNERSHIP, LP, SHIVA RAMBERRAN, PETER KRIEGER, MARLA KRIEGER, and THE ENTERPRISE GROUP, LLC, | |
| Defendants.<br>_____/ | |

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS**

British American Insurance Company Limited ("BAICO" or the "Plaintiff"), a chapter 15 debtor, sues, among others, Peter Krieger and Marla Krieger (the "Defendants").

Mr. Krieger moves to dismiss [ECF No. 25; the "Motion"] Count I (civil theft) of the adversary complaint, and both Defendants move to dismiss Count II (unjust enrichment) of the adversary complaint, on the grounds that the claims presented in those counts are foreclosed by the applicable statutes of limitations. To a great extent the Court agrees. For the reasons stated below, the Motion will be granted in part. Counts I and II of the complaint will be dismissed except to the extent of the Plaintiff's alternative claims in such counts in the aggregate amount of $49,836.20.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must determine, based on "judicial experience and common sense," whether the well-plead facts in the complaint present a plausible claim for relief. *Ashcroft*, 129 S. Ct. at 1950. In making this determination, the Court must accept as true all factual allegations in the complaint. *Id.* at 1949. Motions to dismiss are not favored and are rarely granted. *See, e.g., Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969); *Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465, 471 (5th Cir. 1968). "A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is facially apparent that the claim is time-barred." *Baker v. Sanford*, 484 Fed. App'x 291, 292 (11th Cir. 2012).

The following facts are taken from the complaint.

Beginning in September, 2004, the Plaintiff made five separate investments in the defendant Corban Fund II, LP (the "Corban Fund"), aggregating $10.25 million. All of the Plaintiff's investments were wire transferred into a bank account in the name of the Corban Fund. The Corban Fund bank account had only a nominal balance prior to the Plaintiff's first investment.

The first four investments, totaling $8.75 million, were made pursuant to a subscription agreement and a placement memorandum. These investments were not subject to redemption by the Plaintiff until the end of a stated lock up period. The placement memorandum contains conflicting provisions regarding the term of the lock up period, which was either three or five years.

The Plaintiff made its first two investments, totaling $5 million, near the end of September 2004. Between the end of September 2004 and the middle of December 2004 there were fifteen transfers, aggregating $4,996,589.50, from the Corban Fund bank account to accounts for the benefit of the Defendants. Within ninety days of the Plaintiff's first deposit, essentially all of the Plaintiff's first two investments were redirected to purposes inconsistent with the intended investment. The difference between the Plaintiff's $5 million initial investment and the total of the transfers alleged in the complaint is only $3,410.50.

The Plaintiff made its third investment, in the amount of $2 million, in late December 2004. Nearly all of this sum, $1,989,985, was almost immediately transferred from the Corban Fund account to other accounts for the benefit of the Defendants. Another $10,000 was transferred less than a month later. Of this third investment, only $15 was not transferred to accounts for the benefit of the Defendants.

The Plaintiff's fourth investment with the Corban Fund was made in late January 2005, in the amount of $1.75 million. Again, nearly all of this investment was transferred from the Corban Fund account to other accounts or otherwise for the benefit of the Defendants rather than invested on behalf of the Plaintiff. The first transfer was made the day following the Plaintiff's deposit, with another large transfer early in February 2005, and two smaller transfers in late February 2005. Of the $1.75 million the Plaintiff invested

3

in January 2005, all but $46,410.70 was transferred to accounts or otherwise for the benefit of the Defendants.

In sum, between September 2004 and January 2005 the Plaintiff invested $8.75 million with the Corban Fund on a long term basis, and all but about $50,000 of that amount was soon transferred from the Corban Fund bank account, where it was initially wired, to accounts held in the name of or otherwise for the benefit of one or both Defendants. The last such transfer occurred on February 27, 2005.

In addition to the long term investments outlined above, on March 15, 2007 the Plaintiff made a short term investment with the Corban Fund in the amount of $1.5 million. This investment was made pursuant to a separate term sheet. The Plaintiff had the power to redeem this short term investment on seven days' written notice.

The Plaintiff invested a total of $10.25 million with the Corban Fund. The Plaintiff through its management, and later through its court appointed judicial manager, attempted on various occasions to redeem its investments with the Corban Fund. The first redemption request was made on December 31, 2008 and sought return of the $1.5 million short term investment. On August 18, 2009, the Plaintiff requested return of all of its long term investments with the Corban Fund, totaling $8.75 million. These requests were repeated numerous times. The Plaintiff has not received any repayment on its investments with the Corban Fund. None of the funds the Plaintiff provided to the Corban Fund were invested as promised; instead, Mr. Krieger and defendant Ramberran "knowingly and with felonious intent appropriated BAICO's money for some other improper, unauthorized and self-serving use."

Count I of the complaint presents a claim for civil theft under Fla. Stat. § 772.11. A plaintiff who proves by clear and convincing evidence that he or she has been injured in any

fashion by reason of a violation of Fla. Stat. § 812.014 may recover "threefold the actual damages sustained" and "is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs." Fla. Stat. § 772.11(1).

Fla. Stat. § 812.014 provides, in relevant part:

> A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
>
> (a) Deprive the other person of a right to the property or a benefit from the property.
>
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Fla. Stat. § 812.014(1). The phrase "obtains or uses" means any manner of:

> (a) Taking or exercising control over property.
>
> (b) Making any unauthorized use, disposition, or transfer of property.
>
> (c) Obtaining property by fraud, willful misrepresentation of a future act, or false promise.
>
> (d)    1. Conduct previously known as stealing; larceny; purloining; abstracting; embezzlement; misapplication; misappropriation; conversion; or obtaining money or property by false pretenses, fraud, or deception; or
>
> 2. Other conduct similar in nature.

Fla. Stat. § 812.012(3).

Count II of the complaint presents a claim for unjust enrichment. Under Florida law, the elements of a cause of action for unjust enrichment are: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Hillman Const. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th DCA 1994).

Under Florida law, a civil action for theft "may be commenced at any time within 5 years after the conduct in violation of a provision of this act terminates or the cause of action accrues." Fla. Stat. § 772.17.  There is a four-year statute of limitations for an action for unjust enrichment.  Fla. Stat. § 95.11; *Merle Wood & Assocs. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013).  "A cause of action accrues when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1).

The complaint presents specific allegations, incorporated into each of Count I and Count II, detailing twenty-three transfers of the Plaintiff's funds from the Corban Fund bank account to accounts held in the name of or otherwise for the benefit of the Defendants.  These transfers total $8,700,163.80.  Each such transfer is a separate theft for purposes of Fla. Stat. § 772.11.  Similarly, each such transfer was the last act necessary to support a claim for unjust enrichment.  In other words, immediately after each transfer from the Corban Fund bank account alleged in the complaint the Plaintiff could have pursued a claim for civil theft and a claim for unjust enrichment, exactly as plead in the current complaint.  A cause of action for civil theft and a cause of action for unjust enrichment arose on each such transfer date.

The last of the transfers alleged in the complaint took place on February 27, 2005.  Consequently, the statute of limitations for an unjust enrichment claim expired in February 2009, and the statute of limitations for a civil theft claim expired in February 2010.  In each case, this is years prior to the filing of the present complaint.

The complaint does not detail the fate of the Plaintiff's $1.5 million short term investment.  The Plaintiff's failure to specifically allege what happened to its short term investment leaves a question as to when the Defendants obtained such funds for their own purposes and thus when claims for civil theft and unjust enrichment accrued.  On the other

6

hand, the complaint includes general allegations that all of the Plaintiff's investments were taken contrary to the Plaintiff's intent, including the short term investment. These general allegations might be sufficient to merit denial of the present Motion with regard to the short term investment. But the Plaintiff failed to respond to the Motion in regard to claims arising from the short term investment.[1] This alone is sufficient cause to dismiss the Plaintiff's claims against the Defendants to the extent they relate to the short term investment.

This leaves only $49,836.20 of the Plaintiff's long term investment not addressed. This is less than one-half of one percent of the total amount invested. The complaint includes no detail with regard to the fate of this amount. If this sum was transferred from the Corban Fund bank account at some time, for purposes similar to those elsewhere alleged in the complaint, then a claim for civil theft and unjust enrichment arose on the date or dates of such transfers. If this sum was not transferred from the Corban Fund bank account but remained in that account until the Plaintiff demanded its return, and the redemption request was not complied with in a timely manner, then a cause of action accrued when the Plaintiff was entitled to redemption. From the complaint it is not possible to determine when a claim accrued for civil theft or unjust enrichment relating to

---

[1] The sum of $10.25 million addressed in the complaint necessarily includes all of the investments made by the Plaintiff, both long and short term. Count I (civil theft) specifically references this total amount. The Plaintiff's demand letter to the Corban Fund, pursuant to Fla. Stat. § 772.11, is referenced in Count I and is attached to the complaint as Exhibit 18. In that letter the Plaintiff demanded repayment of the full $10.25 million. While Count II (unjust enrichment) does not indicate a specific dollar amount, it incorporates all of the allegations relating to both the long term and short term investments made by the Plaintiff. Strangely, at footnote 1 of its Response [ECF No. 42], the Plaintiff states that the "$1.5 million short term investment is not the subject of the claims against the Krieger Defendants at this time and thus is not addressed in this memorandum." This statement is inconsistent with the plain text of the complaint. Both Count I and Count II state claims against the Defendants arising from the $1.5 million short term investment. The Motion before the Court seeks dismissal of all claims against the Defendants presented in the complaint, including claims relating to the short term investment. The Plaintiff failed to respond to the Motion to the extent it requests dismissal of claims relating to the short term investment.

this last $49,836.20, and so the Plaintiff's alternative requests for relief in Counts I and II shall proceed to trial only to such extent.[2]

The recent decision in *Tews v. Valdeon*, No. 12-23026, 2013 WL 5333205 (S.D. Fla. Sept. 23, 2013), cited by the Plaintiff, provides no assistance here. In *Tews*, the plaintiff made several investments with the defendant and the investments were repayable on demand. *Id.* at *1. The plaintiff was repaid part of his investment apparently without demand. *Id.* Several years later the plaintiff demanded return of the remainder of his investment but did not receive it. *Id.* The defendant argued that causes of action for unjust enrichment and civil theft, among others, arose on the date the defendant voluntarily repaid part of the plaintiff's investment. *Id.* at *4. The court disagreed, pointing out that a cause of action accrues only when the defendant "acted in a manner that was harmful" to the plaintiff. *Id.* As in this case, the plaintiff in *Tews* alleged that the defendant paid himself the funds during a specified period. *Id.* at *4-5. In *Tews*, the transfers in question took place within the limitations period, and so the motion to dismiss was denied. *Id.* By contrast, the transfers in this case took place well outside the limitations period.

The Plaintiff was harmed on each date that its invested funds were removed from the Corban Fund bank account to be used for a purpose other than investment for the Plaintiff's benefit. This was long before the Plaintiff demanded return of its funds. That the Plaintiff may not have known that its funds were taken has no bearing on the present analysis. Under Florida law, claims for unjust enrichment and civil theft are not entitled to the benefit of the delayed discovery doctrine. *Davis v. Monahan*, 832 So. 2d 708 (Fla. 2002).

---

[2] The Court is mindful of the irony in not dismissing claims relating to less than one-half of one percent of the total amount invested based on the failure to allege when such amounts were transferred to the benefit of the Defendants. While there may have been other arguments for dismissal of these remaining claims, the present Motion seeks relief based solely on the statutes of limitations.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. The Motion to Dismiss [ECF No. 25] is GRANTED IN PART.

2. Counts I and II of the complaint are dismissed except with regard to requests for relief arising from alleged investments made by the Plaintiff aggregating $49,836.20. Any claim for treble damages under applicable law is preserved.

### 

Copies Furnished To:

Robert C. Sheres, Esq.

*Robert C. Sheres, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service.*