[Tagged]



**ORDERED in the Southern District of Florida on February 25, 2014.**

Erik P. Kimball, Judge
United States Bankruptcy Court
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | CHAPTER 15 |
| BRITISH AMERICAN INSURANCE COMPANY LIMITED, | CASE NO. 09-31881-EPK<br>CASE NO. 09-35888-EPK<br>(Jointly Administered) |
|     Debtor in a Foreign Proceeding.<br>_____/ | |
| BRITISH AMERICAN INSURANCE COMPANY LIMITED, | |
|     Plaintiff,<br>v. | ADV. PROC. NO. 13-01603-EPK |
| CORBAN FUND II, LP, CORBAN PARTNERS, LLC, RYAN CORBAN GROUP, LLC, KRIEGER FAMILY PARTNERSHIP, LP, SHIVA RAMBERRAN, PETER KRIEGER, MARLA KRIEGER, and THE ENTERPRISE GROUP, LLC, | |
|     Defendants.<br>_____/ | |

**AMENDED PROPOSED ORDER GRANTING IN PART
<u>DEFENDANTS' MOTION TO DISMISS</u>**

British American Insurance Company Limited ("BAICO" or the "Plaintiff"), a

chapter 15 debtor, sues, among others, Peter Krieger and Marla Krieger (the "Defendants"). Mr. Krieger moves to dismiss [ECF No. 25; the "Motion"] Count I (civil theft) of the adversary complaint, and both Defendants move to dismiss Count II (unjust enrichment) of the adversary complaint, on the grounds that the claims presented in those counts are foreclosed by the applicable statutes of limitations. To a great extent the Court agrees. For the reasons stated below, the Motion should be granted in part. Counts I and II of the complaint should be dismissed except to the extent of the Plaintiff's alternative claims in such counts in the aggregate amount of $49,836.20.

This Amended Proposed Order replaces that certain *Order Granting in Part Defendants' Motion to Dismiss* entered at ECF No. 57. The text of this Amended Proposed Order is amended (a) to reflect the Court's determination pursuant to 28 U.S.C. § 157(b)(3) that all claims presented in this adversary proceeding are non-core matters, (b) to provide appropriate direction to the parties and the clerk consistent with Fed R. Bankr. P. 9033, and (c) to set out additional analysis.

MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must determine, based on "judicial experience and common sense," whether the well-plead facts in the complaint present a plausible claim for relief. *Ashcroft*, 129 S. Ct. at 1950. In making this determination, the Court must accept as true all factual allegations in the complaint. *Id.* at 1949. Motions to dismiss are not favored and are rarely granted. *See, e.g., Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969); *Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465, 471 (5th Cir. 1968). "A Rule 12(b)(6) dismissal

2

on statute of limitations grounds is appropriate only if it is facially apparent that the claim is time-barred." *Baker v. Sanford*, 484 Fed. App'x 291, 292 (11th Cir. 2012).

BACKGROUND

The following facts are taken from the complaint.

Beginning in September, 2004, the Plaintiff made five separate investments with the defendant Corban Fund II, LP (the "Corban Fund"), aggregating $10.25 million. All of the Plaintiff's investments were wire transferred into a bank account in the name of the Corban Fund. The Corban Fund bank account had only a nominal balance prior to the Plaintiff's first investment.

The first four investments, totaling $8.75 million, were made pursuant to a subscription agreement and a placement memorandum. These investments were not subject to redemption by the Plaintiff until the end of a stated lock up period. The placement memorandum contains conflicting provisions regarding the term of the lock up period, which was either three or five years.

The Plaintiff made its first two investments, totaling $5 million, near the end of September 2004. Between the end of September 2004 and the middle of December 2004 there were fifteen transfers, aggregating $4,996,589.50, from the Corban Fund bank account to accounts for the benefit of the Defendants. Within ninety days of the Plaintiff's first deposit, essentially all of the Plaintiff's first two investments were redirected to purposes inconsistent with the intended investment. The difference between the Plaintiff's $5 million initial investment and the total of the transfers alleged in the complaint is only $3,410.50.

The Plaintiff made its third investment, in the amount of $2 million, in late December 2004. Nearly all of this sum, $1,989,985, was almost immediately transferred

from the Corban Fund bank account to other accounts for the benefit of the Defendants. Another $10,000 was transferred less than a month later. Of this third investment, only $15 was not transferred to accounts for the benefit of the Defendants.

The Plaintiff's fourth investment with the Corban Fund was made in late January 2005, in the amount of $1.75 million. Again, nearly all of this investment was transferred from the Corban Fund bank account to other accounts or otherwise for the benefit of the Defendants rather than invested on behalf of the Plaintiff. The first transfer was made the day following the Plaintiff's deposit, with another large transfer early in February 2005, and two smaller transfers in late February 2005. Of the $1.75 million the Plaintiff invested in January 2005, all but $46,410.70 was transferred to accounts or otherwise for the benefit of the Defendants.

In sum, between September 2004 and January 2005 the Plaintiff invested $8.75 million with the Corban Fund on a long term basis, and all but about $50,000 of that amount was soon transferred from the Corban Fund bank account, where it was initially wired, to accounts held in the name of or otherwise for the benefit of one or both Defendants. The last such transfer occurred on February 27, 2005.

In addition to the long term investments outlined above, on March 15, 2007 the Plaintiff made a short term investment with the Corban Fund in the amount of $1.5 million. This investment was made pursuant to a separate term sheet. The Plaintiff had the power to redeem this short term investment on seven days' written notice.

The Plaintiff invested a total of $10.25 million with the Corban Fund. The Plaintiff through its management, and later through its court appointed judicial manager, attempted on various occasions to redeem its investments with the Corban Fund. The first redemption request was made on December 31, 2008 and sought return of the $1.5 million

4

short term investment.  On August 18, 2009, the Plaintiff requested return of all of its long term investments with the Corban Fund, totaling $8.75 million.  These requests were repeated numerous times.  The Plaintiff has not received any repayment on its investments with the Corban Fund.  None of the funds the Plaintiff provided to the Corban Fund were invested as promised; instead, Mr. Krieger and defendant Ramberran "knowingly and with felonious intent appropriated BAICO's money for some other improper, unauthorized and self-serving use."

ANALYSIS

Count I of the complaint presents a claim for civil theft under Fla. Stat. § 772.11.  A plaintiff who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of a violation of Fla. Stat. § 812.014 may recover "threefold the actual damages sustained" and "is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs." Fla. Stat. § 772.11(1).

Fla. Stat. § 812.014 provides, in relevant part:

> A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
>
> (a) Deprive the other person of a right to the property or a benefit from the property.
>
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Fla. Stat. § 812.014(1).  The phrase "obtains or uses" means any manner of:

> (a) Taking or exercising control over property.
>
> (b) Making any unauthorized use, disposition, or transfer of property.
>
> (c) Obtaining property by fraud, willful misrepresentation of a future act, or false promise.

5

>    (d)    1. Conduct previously known as stealing; larceny; purloining; abstracting; embezzlement; misapplication; misappropriation; conversion; or obtaining money or property by false pretenses, fraud, or deception; or
>
>    2. Other conduct similar in nature.

Fla. Stat. § 812.012(3).

Count II of the complaint presents a claim for unjust enrichment.  Under Florida law, the elements of a cause of action for unjust enrichment are: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Hillman Const. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th DCA 1994).

Under Florida law, a civil action for theft "may be commenced at any time within 5 years after the conduct in violation of a provision of this act terminates or the cause of action accrues." Fla. Stat. § 772.17.  There is a four-year statute of limitations for an action for unjust enrichment.  Fla. Stat. § 95.11; *Merle Wood & Assocs. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013).  "A cause of action accrues when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1).

The Plaintiff repeatedly alleges that the funds wired to the Corban Fund bank account remained "BAICO's money" at the time of each wrongful transfer from the account, and that each transfer was "without BAICO's authorization."  The complaint presents specific allegations, incorporated into each of Count I and Count II, detailing twenty-three transfers of the Plaintiff's funds from the Corban Fund bank account to accounts held in the name of or otherwise for the benefit of the Defendants.  These transfers total $8,700,163.80.  Each such transfer is a separate theft for purposes of Fla. Stat. § 772.11.  Similarly, each such transfer was the last act necessary to support a claim for unjust enrichment.  In other

6

words, immediately after each transfer from the Corban Fund bank account alleged in the complaint the Plaintiff could have pursued a claim for civil theft and a claim for unjust enrichment, exactly as plead in the current complaint.

The last of the transfers alleged in the complaint took place on February 27, 2005. Consequently, the statute of limitations for an unjust enrichment claim expired, at the latest, in February 2009, and the statute of limitations for a civil theft claim expired, at the latest, in February 2010. In each case, this is years prior to the filing of the present complaint.

The complaint does not detail the fate of the Plaintiff's $1.5 million short term investment. The Plaintiff's failure to specifically allege what happened to its short term investment leaves a question as to when the Defendants obtained such funds for their own purposes and thus when claims for civil theft and unjust enrichment accrued. On the other hand, the complaint includes general allegations that all of the Plaintiff's investments were taken contrary to the Plaintiff's intent, including the short term investment. These general allegations might otherwise be sufficient to merit denial of the present Motion with regard to the short term investment. But the Plaintiff failed to respond to the Motion in regard to claims arising from the short term investment.[1] This alone is sufficient cause to dismiss

---

[1] The sum of $10.25 million addressed in the complaint necessarily includes all of the investments made by the Plaintiff, both long and short term. Count I (civil theft) specifically references this total amount. The Plaintiff's demand letter to the Corban Fund, pursuant to Fla. Stat. § 772.11, is referenced in Count I and is attached to the complaint as Exhibit 18. In that letter the Plaintiff demanded repayment of the full $10.25 million. While Count II (unjust enrichment) does not indicate a specific dollar amount, it incorporates all of the allegations relating to both the long term and short term investments made by the Plaintiff. Strangely, at footnote 1 of its Response [ECF No. 42], the Plaintiff states that the "$1.5 million short term investment is not the subject of the claims against the Krieger Defendants at this time and thus is not addressed in this memorandum." This statement is inconsistent with the plain text of the complaint. Both Count I and Count II state claims against the Defendants arising from the $1.5 million short term investment. The Motion before the Court seeks dismissal of all claims against the Defendants presented in the complaint, including claims relating to the short term investment. The Plaintiff failed to respond to the Motion

the Plaintiff's claims against the Defendants to the extent they relate to the short term investment.

This leaves only $49,836.20 of the Plaintiff's long term investment not addressed. The complaint includes no detail with regard to the fate of this amount. If this sum was transferred from the Corban Fund bank account at some time, for purposes similar to those elsewhere alleged in the complaint, then a claim for civil theft and unjust enrichment arose on the date or dates of such transfers. If this sum was not transferred from the Corban Fund bank account but remained in that account until the Plaintiff demanded its return, and the redemption request was not complied with in a timely manner, then perhaps a cause of action accrued when the Plaintiff was entitled to redemption. From the complaint it is not possible to determine when a claim accrued for civil theft or unjust enrichment relating to this last $49,836.20, and so the Plaintiff's alternative requests for relief in Counts I and II shall proceed to trial only to such extent.[2]

The recent decision in *Tews v. Valdeon*, No. 12-23026, 2013 WL 5333205 (S.D. Fla. Sept. 23, 2013), cited by the Plaintiff, provides no assistance here. In *Tews*, the plaintiff made several investments with the defendant and the investments were repayable on demand. *Id.* at *1. The plaintiff was repaid part of his investment apparently without demand. *Id.* Several years later the plaintiff demanded return of the remainder of his investment but did not receive it. *Id.* The defendant argued that causes of action for unjust enrichment and civil theft, among others, arose on the date the defendant voluntarily

---

to the extent it requests dismissal of claims relating to the short term investment.
[2] The Court is mindful of the irony in not dismissing claims relating to less than one-half of one percent of the total amount invested based on the failure to allege when such amounts were transferred to the benefit of the Defendants. While there may have been other arguments for dismissal of these remaining claims, the present Motion seeks relief based solely on the statutes of limitations.

repaid part of the plaintiff's investment. *Id*. at \*4.  The court disagreed, pointing out that a cause of action accrues only when the defendant "acted in a manner that was harmful" to the plaintiff. *Id*.  As in this case, the plaintiff in *Tews* alleged that the defendant paid himself the funds during a specified period. *Id*. at \*4-5.  In *Tews*, the transfers in question took place within the limitations period, and so the motion to dismiss was denied. *Id*.  By contrast, the transfers in this case took place well outside the limitations period.

The Plaintiff was harmed on each date that its funds were removed from the Corban Fund bank account to be used for a purpose other than investment for the Plaintiff's benefit.  That the Plaintiff may not have known that its funds were taken has no bearing on the present analysis.  Under Florida law, claims for unjust enrichment and civil theft are not entitled to the benefit of the delayed discovery doctrine.  *Davis v. Monahan*, 832 So. 2d 708 (Fla. 2002).

Dismissal of claims against the Defendants should be with prejudice.  The Plaintiff is represented by counsel and neither filed a motion to amend nor requested leave to amend the complaint.  In such a case, the Court is not required to grant leave to amend *sua sponte*. *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc).

NON-CORE DETERMINATION; PROPOSED FINDINGS AND CONCLUSIONS

Pursuant to 28 U.S.C. § 157(b)(3), the Court determines that all claims presented in this adversary proceeding are non-core matters.[3]  Because all parties to the proceeding have not consented to entry of final orders and judgments in this Court,[4] this matter is subject to

---

[3] For a detailed analysis of bankruptcy jurisdiction and related Article III concerns in the chapter 15 context, see this Court's decision in *British Am. Ins. Co. v. Fullerton (In re British Am. Ins. Co.)*, 488 B.R. 205, 218-237 (Bankr. S.D. Fla. 2013).

[4] Under 28 U.S.C. § 157(c)(2), this Court may enter final orders and judgments in a non-core matter "with the consent of all the parties to the proceeding."  Such consent may be provided explicitly.  In addition, a party may consent to entry of a final order or judgment in this Court by failing to object in a timely manner.  *Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702

filing of proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1).

CONCLUSION

Accordingly, the Court proposes the following:

1.   The Motion to Dismiss [ECF No. 25] is GRANTED IN PART.

2.   Counts I and II of the complaint are dismissed with prejudice except with regard to requests for relief arising from alleged investments made by the Plaintiff aggregating $49,836.20.  Any claim for treble damages under applicable law is preserved.

3.   This Amended Proposed Order constitutes the Court's proposed findings of

---

F.3d 553, 566-570 (9th Cir. 2012), *cert. granted*, 133 S. Ct. 2880 (2013). This Court's standard *Order Setting Filing and Disclosure Requirements for Pretrial and Trial*, entered in this matter at ECF No. 3, provides:

> Not later than ten (10) days before the date first set for the pretrial conference in the summons each party objecting to the entry of final orders or judgments by this court on any issue in this proceeding, whether or not designated as "core" under 28 U.S.C. § 157(b), shall file with this court a motion requesting that this court determine whether this proceeding is a core proceeding or otherwise subject to the entry of final orders or judgments by this court. Any such motion shall be treated as an objection to the entry of final orders or judgments by this court. FAILURE OF ANY PARTY TO FILE A MOTION ON OR BEFORE THE DEADLINE PROVIDED IN THIS PARAGRAPH SHALL CONSTITUTE CONSENT BY SUCH PARTY TO THIS COURT ENTERING ALL APPROPRIATE FINAL ORDERS AND JUDGMENTS IN THIS PROCEEDING. Nothing in this paragraph limits this court's ability to determine *sua sponte* whether this proceeding is a core proceeding under 28 U.S.C. § 157(b)(3) or otherwise subject to entry of final orders or judgments by this court.

This objection deadline is tied to the date of the original pretrial conference set in the summons and typically is not extended by a continuance of the pretrial conference to a later date.  Arguably, the original objection deadline in this matter expired long ago, no party filed the required motion, and thus all parties consented to entry of final orders and judgments by this Court.  The Plaintiff, in its complaint, alleged that all claims presented are "core."  While the Court has determined that such is not the case, the Plaintiff's allegation that all matters are core bolsters the view that the Plaintiff consented to entry of final orders and judgments by this Court as "core" matters are subject to final ruling here under 28 U.S.C. § 157(b)(1).  On the other hand, it is possible that the parties interpret the most recent order continuing the pretrial conference in this matter, entered at ECF No. 54, as extending the objection deadline to March 31, 2014, ten (10) days prior to the continued pretrial conference.  After this Court entered its original order on the current Motion [ECF No. 57], which order was not filed as proposed findings of fact and conclusions of law under Fed. R. Bankr. P. 9033, the Plaintiff filed a motion to extend the objection deadline under that rule [ECF No. 63], thus exhibiting an intent not to consent to entry of final orders and judgments here.  Assuming the objection deadline set in the Court's scheduling order has not passed, the Defendants have yet to answer and have not otherwise indicated that they consent to entry of final orders and judgments in this Court.  In light of these circumstances, the Court determines to treat the matter as one not presently before this Court with consent under 28 U.S.C. § 157(c)(2) and files this ruling as proposed findings of fact and conclusions of law under Fed. R. Bankr. P. 9033.

fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1).  The clerk shall serve this Amended Proposed Order on the parties pursuant to Fed. R. Bankr. P. 9033(a).

4. The clerk is directed to submit to the district court, pursuant to 28 U.S.C. § 157(c)(1) and Fed. R. Bankr. P. 9033, the following:

> a. this Amended Proposed Order;
>
> b. the complaint in this adversary proceedings [ECF No. 1];
>
> c. the motion to dismiss [ECF No. 25];
>
> d. the response filed in connection with such motion to dismiss [ECF No. 42];
>
> e. the reply filed in connection with such motion to dismiss [ECF No. 45]; and
>
> f. any objections filed pursuant to Fed. R. Bankr. P. 9033.

5. The parties shall comply with Fed. R. Bankr. P. 9033.

###

Copies Furnished To:

Robert C. Sheres, Esq.

*Robert C. Sheres, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service.*